No. 13-3118

# United States Court of Appeals for the Sixth Circuit

Joe D'Ambrosio,

*Plaintiff – Appellant*,

v.

Carmen Marino, et al.,

*Defendants - Appellees.*

*Appeal of Judgment of United States District Court for the Northern District of Ohio*

## Joe D'Ambrosio's Petition for Rehearing En Banc

Terry H. Gilbert (OH 0021948)
Gordon S. Friedman (OH 0021946)
Friedman & Gilbert
55 Public Square Building, Ste. 1055
Cleveland, OH 44113
Tel. (216) 241-1430
Fax. (216) 621-0427
E: tgilbert@f-glaw.com

Jeffry F. Kelleher (OH 0000784)
Jeffry F. Kelleher & Assoc.
526 Superior Avenue, Ste. 1540
Tel. (216) 241-0520
Fax. (216) 241-6961
E: jfkelleher@route61.com

David E. Mills (OH 0075400)
*Counsel of Record*
The Mills Law Office LLC
1300 West Ninth Street, Suite 636
Cleveland, OH 44113
Tel. (216) 929-4747
Fax. (202) 379-1767
E: dm@MillsFederalAppeals.com

*Counsel for Joe D'Ambrosio*

April 17, 2014

# TABLE OF CONTENTS

Table of Contents ................................................................................. ii

Table of Authorities ............................................................................. iii

Introduction and Rule 35(b) Statement ................................................. 1

Background .......................................................................................... 2

Reasons for Granting the Petition ......................................................... 5

I. The panel's decision conflicts with *Iqbal* and *Twombly* by failing to recognize that *proven* misconduct by a high-level official entitles a plaintiff to discovery regarding the extent of that misconduct .......... 5

II. The panel's decision conflicts with Supreme Court precedent, which makes clear that the Eleventh Amendment does not extend to counties. ......... 9

III. The panel's decision conflicts with the Supreme Court's rejection of highly technical readings of complaints where a proper claim is fairly presented. ........................................................................................ 10

Conclusion .......................................................................................... 14

Certificate of Service .......................................................................... 15

# TABLE OF AUTHORITIES

**Cases**

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ………………………………………*passim*

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007)………………….………*passim*

*Bertuglia v. City of New York*, 839 F. Supp. 2d 703 (S.D.N.Y. 2012)………….…6

*Cady v. Arenac Cnty.*, 574 F.3d 334 (6th Cir. 2009)………………………….…...10

*Erie Cnty. v. Morton Salt, Inc.*, 702 F.3d 860 (6th Cir. 2012)………………….…..6

*Lott v. Coyle*, 366 F.3d 431 (6th Cir. 2004)………………………………………….3

*Mendard v. CSX Transp. Inc.*, 698 F.3d 40 (1st Cir. 2012)…………………..…..6

*Moldowan v. City of Warren*, 578 F.3d 351 (6th Cir. 2010)……………...……10, 11, 12

*Northern Ins. Co. v. Chatham Cnty.*, 547 U.S. 189 (2006)………………………….9

*Pembaur v. City of Cincinnati*, 475 U.S. 469 (1986)……………………………….9

*State v. Larkins*, 2006 Ohio 90 (Ohio Ct. App. Jan. 12, 2006)……………………3

*Swierkiewicz v. Sorema N.A.*, 534 U.S. 506 (2002)………………………………..13

**Other**

Gershman, *Litigating Brady v. Maryland*: *Games Prosecutors Play*, 57 Case W. Law Rev. 547 (2007)……………………………………………………………….3

# INTRODUCTION AND RULE 35(b) STATEMENT

*Twombly* and *Iqbal* heightened the pleading standards in every federal civil case, but the panel's decision here takes those standards to a new extreme, placing the Sixth Circuit in conflict with Supreme Court precedent.

The question is fundamental: How much misconduct by a defendant must be already known and alleged in a complaint for a plaintiff to be permitted to obtain discovery about the true extent of that misconduct? Joe D'Ambrosio was freed after 20 years on death row because the county prosecutor's office—and particularly the veteran, high-level prosecutor Carmen Marino—withheld evidence of D'Ambrosio's innocence and committed additional misconduct. D'Ambrosio's § 1983 suit included a *Monell* claim against the county—that is, a claim that misconduct was sufficiently widespread during Marino's influential tenure to be a practice of the office itself. Discovery would reveal the truth about the office.

But the county argued that no discovery was permitted because the complaint did not cite enough additional known misconduct. Judge Kethledge responded: "I mean, absent discovery, how the heck are they supposed to solve this quantitative problem?" ([1/23/14 oral arg](1/23/14 oral arg)., 19:09–19:13.) Yet the panel unanimously concluded that no discovery was permitted, setting an unsupportable pleading standard for all civil cases in this Circuit. En banc review is warranted.

## BACKGROUND

Misconduct is often committed behind closed doors—sometimes revealed after years; many times never revealed at all. What is known about the misconduct of the Cuyahoga County Prosecutor's Office—and committed at the highest levels of that office's trial prosecutors—is staggering. But, if this panel's decision remains intact, we will never know the true extent of it within the County.

Joe D'Ambrosio was on death row for more than a decade until federal courts required that the County and police turn over all of their files, finally revealing the evidence of his innocence that they had concealed all along. (This included evidence that another suspect had a motive to kill the victim, that the suspect knew details about the victim's injuries that were not publicly known, and that—contrary to what the jury heard—the murder likely took place in the suspect's building where people heard someone say "let's dump the body"). After 20 years on death row and even further misconduct by the County, D'Ambrosio was freed.

The passage of time also revealed additional misconduct that occurred in that office in other cases. For example, the same high-level lead prosecutor, Carmen Marino, also withheld exculpatory evidence in the murder case against a man named Ronald Larkins. Larkins was also tried in the 1980s, just before

D'Ambrosio, and it wasn't until 2003 that this misconduct surfaced. *See State v. Larkins*, 2006 Ohio 90, 2006 Ohio App. LEXIS 80 (Ohio Ct. App. Jan. 12, 2006). Larkins was also freed. And in 2004, this Court noted what was called the "shameful" record of Marino, citing more than ten cases involving "similar misconduct" to *Brady* violations. (Second Am. Compl. ¶ 28; R. 20 at 25; PageID #333–34 (citing *Lott v. Coyle*, 366 F.3d 431, 433 n.1 (6th Cir. 2004)).) After years and years, the world started to learn that Marino and the County cheated to obtain convictions. Scholars began taking note as well: "One of the most notorious perpetrators of this type of misconduct is the former chief prosecutor in Cuyahoga County, Ohio, Carmen Marino." Gershman, *Litigating Brady v. Maryland*: *Games Prosecutors Play*, 57 Case W. Law Rev. 547 (2007).

    This all sets up a disturbing question: What is the true extent of this misconduct, and—if Marino could commit it so egregiously and remain at such a high-level in that office for decades—did it infect that office? *See id.* at 548 ("[O]ne can only wonder how many other 'Marino prosecutions' included exculpatory evidence that Marino concealed from the defense."). The civil justice system has, of course, a longstanding mechanism to find out the truth in these situations: the discovery stage.

Thus, D'Ambrosio filed this § 1983 suit seeking compensation for his wrongful imprisonment. The suit included a *Monell* claim against the Cuyahoga County Prosecutor's Office, alleging both that Marino—as a high-level lead prosecutor for so many years—was a "policymaker," and that the County itself had a policy or custom of participating in misconduct to obtain convictions. The suit also included an alternative claim against lead police detective Leo Allen, alleging that he had withheld exculpatory evidence as well.

The Defendants argued that no discovery was permitted, and the district court agreed, entering judgment against D'Ambrosio. D'Ambrosio appealed to this Court.

In the attached [opinion](#) by Judge Griffin, joined by Judge Suhrheinrich and Judge Kethledge, the panel affirmed. Their conclusion was that, despite the known and undisputed misconduct at such high levels, no discovery was permitted into the extent of that misconduct under *Iqbal* and *Twombly*. If that decision is left intact, we will never know the truth. Nor will other plaintiffs who file suit in this circuit based on similarly known misconduct but who seek to employ the discovery process to reveal the full extent of that misconduct. D'Ambrosio seeks en banc review to remedy this state of affairs.

# REASONS FOR GRANTING THE PETITION

**I.    The panel's decision conflicts with *Iqbal* and *Twombly* by failing to recognize that *proven* misconduct by a high-level official entitles a plaintiff to discovery regarding the extent of that misconduct.**

The complaints in both *Twombly* and *Iqbal* were legally insufficient because their factual allegations were consistent with (and more likely explained by) *proper* conduct by the defendants—thus, it was mere speculation whether misconduct had even occurred. In *Twombly*, the complaint alleged an antitrust violation based on facts that were perfectly consistent with acceptable, free-market behavior. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 565–66 (2007). In *Iqbal*, the complaint alleged invidious discrimination in detaining Arab Muslim men based on facts that were at least equally consistent with acceptable investigative work regarding the 9/11 attacks. *Ashcroft v. Iqbal*, 556 U.S. 662, 682 (2009).

By contrast, the essential misconduct against D'Ambrosio *has already been proven*. The sole question is whether that egregious, documented, and undisputed misconduct—by a high-level official serving the County for decades—fairly raises an inference that misconduct infected the County itself, qualifying as a practice or custom. The alleged misconduct in *Twombly* and *Iqbal* was entirely speculative, so discovery was not permitted; the alleged misconduct here is evident—and it is at

5

the very least plausible that it extended to the County itself in light of Marino's years of influence and accolades there.

The panel ultimately held, however, that Marino was simply just a "bad apple" and that there was no plausible liability alleged against the County. (Panel Opinion at 12.) But Marino was not some low-level employee without influence in the office. This isn't like a situation where some rookie police officer goes rogue. Marino had a 30-year career, was running prosecutions in the most high-profile cases, and he was at the highest levels of that office (just below the elected prosecutor). He was so well known and respected in the office that the County later established the "Carmen Marino Award" for the top prosecutor of the year. The award celebrates "integrity and professionalism in the pursuit of justice." In light of what was revealed about his tactics, efforts were made to remove his name from the award. *County Prosecutor Bill Mason should retire Carmen Marino Award*, Plain Dealer, 9/18/2008, available at http://www.cleveland.com/ brett/blog/index.ssf/2008/09/regina_brett_county_prosecutor.html.

The question is simply whether it's plausible that Marino was not an isolated "bad apple," but actually had massive influence in the office, set a standard for prosecutorial practice, and symbolized the type of misconduct that the office engaged in during his tenure as a leader there.

When assessing that plausibility question, we also have to remember that the type of misconduct here is secretive. Thus, courts must look to those incidents that have managed to surface to assess whether there is a reasonable inference that they indicate a custom of similar *hidden* misconduct. *See Erie Cnty. v. Morton Salt, Inc.*, 702 F.3d 860 (6th Cir. 2012) ("Rational people, after all, do not conspire out in the open, and a plaintiff is very unlikely to have factual information that would exclude the possibility of non-conspiratorial explanations before discovery."); *Mendard v. CSX Transp. Inc.*, 698 F.3d 40, 45–46 (1st Cir. 2012) (Boudin, J.) (discussing *Iqbal* and explaining that discovery is warranted where a plausible claim may be indicated "'based on what is known,' at least where, as here, "some of the information needed may be in the control of the defendants'"); *Bertuglia v. City of New York*, 839 F. Supp. 2d 703, 740 (S.D.N.Y. 2012) (denying motion to dismiss *Monell* claims against prosecutor's office where plaintiff cited to various cases where prosecutors from that office committed misconduct—the complaint alleged sufficient facts under *Iqbal* to allow the court "to draw the inference that there is a history of mishandling grand jury presentations," including problems with *Brady* material).

Judge Kethledge recognized this point when responding to the County's argument that any additional misconduct would already be known and out in the open:

> That all sounds highly speculative, really. I mean I don't know if they would have—you know, if Marino did this in 20 other cases that we'd already know about it. I have no idea. I really don't. I mean I'm sure Marino is doing everything he can to make sure that doesn't get known by everybody.

(20:36–20:53.)

The practical result of the panel's interpretation of *Twombly* and *Iqbal* here is that no § 1983 claim can ever be brought against a prosecutor's office (and no discovery will be permitted) for withholding evidence unless one has *already learned* the extent of that secret misconduct. That turns *Twombly* and *Iqbal* on their heads.

Judge Kethledge's questions to the County at oral argument also captured this point:

> It's hard not to have some sympathy for the Plaintiff in that respect. I mean, absent discovery, how the heck are they supposed to solve this quantitative problem? Just sit around and hope someone else has a successful habeas petition?

(19:03–19:18.)

The answer is that *Twombly* and *Iqbal* entitle the plaintiff to discovery when there is known misconduct that raises a *plausible inference*—not proof—that there is

8

actionable misconduct. This is merely the pleading stage. If discovery were permitted and it revealed that Marino really was just a "bad apple" with little influence over the office (a dubious possibility), then the County could move for summary judgment on their "bad apple" theory. But the sole question at this preliminary stage is whether there is a plausible inference that the County has liability. As Judge Kethledge stated: "This is a pleading; I mean, we don't ask for proof, you know. It's just whether we can infer that there is a basis for liability, plausibly." (16:36–16:46.) That inference exists here, and it exists in any civil case presenting similar circumstances of known misconduct. Under *Twombly* and *Iqbal*, the truth-seeking process of discovery must be permitted in these contexts. The panel's decision imperils this established process.

## II. The panel's decision conflicts with Supreme Court precedent, which makes clear that the Eleventh Amendment does not extend to counties.

The Supreme Court has held that a local prosecutor can be considered a policymaking official for the entity the prosecutor serves. *Pembaur v. City of Cincinnati*, 475 U.S. 469, 480 (1986). The Supreme Court has also made clear that the Eleventh Amendment, which insulates *state* treasuries from suit, does not apply to local entities such as counties and municipalities. *Northern Ins. Co. v. Chatham Cnty.*, 547 U.S. 189, 193 (2006) (the Court "has repeatedly refused to extend sovereign immunity to counties"). Thus, if a local prosecutor has sufficient

discretion and authority, that prosecutor can be said to be a policymaker for that entity, subjecting it to *Monell* liability. *Pembaur*, 475 U.S. at 485.

This Court, however, has blurred these clear doctrines through a series of cases holding that, in some circumstances, local prosecutors "act as arms of the state" for the lone reason that they are enforcing state laws. (Panel Opinion at 8.) This, in turn, has led this Court to conclude that the Eleventh Amendment bars suits against the *local* entities those prosecutors serve, such as the county here— even though there is no impact on the state treasury. *See, e.g.*, *Cady v. Arenac Cnty.*, 574 F.3d 334, 343 (6th Cir. 2009). This is improper, and the en banc Court should bring Sixth Circuit precedent in line with the Supreme Court's refusal "to extend sovereign immunity to counties." *Northern Ins. Co.*, 547 U.S. at 193.

III. **The panel's decision conflicts with the Supreme Court's rejection of highly technical readings of complaints where a proper claim is fairly presented.**

Police officers have a duty to turn over exculpatory evidence to the prosecutor so that it is not withheld from the defendant. *Moldowan v. City of Warren*, 578 F.3d 351 (6th Cir. 2010). The Complaint states that Detective Allen withheld evidence "from the defense," and D'Ambrosio explained that this simply means that Allen withheld evidence from the defense by withholding it from the prosecutor. Detective Allen argued that the claim should be dismissed because it was phrased as withholding evidence "from the defense" instead of "from the

defense through the prosecutor" or simply "from the prosecutor." D'Ambrosio noted in the district court and on appeal that this Court used precisely that same phrasing in *Moldowan* when discussing the same claim. *Moldowan*, 578 F.3d at 382 ("statements should have been disclosed to the defense").

Judge Kethledge pressed this point to counsel for Detective Allen at oral argument, contending that Allen's argument for dismissing this claim was "highly technical":

> It's a highly technical argument, I would say. I mean . . . even in *Moldowan* itself, the majority opinion, there's a reference to failure of the officer to turn over materials "to the defense." Frankly it seems to me like more of a shorthand for how people described the wrongful conduct in these cases. And, you know, I had an opinion in that case as well, and the way I phrased it was: the violation is the "officer's concealment" of the exculpatory evidence. So it's not did he provide it to one person or another; the violation occurs if he simply conceals it. And why isn't that adequately pled here? I mean he had a number of highly exculpatory pieces of evidence that he just concealed—he didn't give them to anybody.

(27:05–28:15.)

Counsel for Detective Allen emphasized that the officer's duty was to turn over evidence to the prosecutor. And when counsel stated that the complaint's phrasing undercut the distinction between the police officer's duty and the

prosecutor's duty, Judge Kethledge disagreed: "I just don't see that at all." (29:36–29:38.)

Judge Kethledge repeated the point that this Court in *Moldowan* used the same phrasing as in the complaint here and that everyone knows the duty is to turn evidence over to the prosecutor, leading to this exchange:

> Judge Kethledge: Did our court just misspeak in *Moldowan* when we said the officer had liability because of his failure, to quote, turn over evidence "to the defense"? Or is that just a shorthand that people use in describing the injury in these cases?
>
> Counsel for Allen: I don't think that it misspoke because if you read the opinion it's very clear what the source of the liability was in that case. * * * It was very clear in that case that was the obligation of the officer to turn over to the prosecutor. And so—
>
> Judge Kethledge: Everybody knows that. I mean, everybody knows that.

(30:34–31:11.)

This exchange further revealed that, but for this technical argument, the claim against Allen would be entitled to proceed to discovery on the merits:

> Judge Kethledge: If you're mistaken about this technical barrier to their claim going forward, would you concede that based on these I would think highly exculpatory pieces of evidence that Detective Allen . . . allegedly concealed— would you agree that those allegations do make

> out a claim for officer liability under this Court's decision in *Moldowan* and the Supreme Court's decision in *Trombetta*?
>
> * * *
>
> Counsel for Allen: . . . . I would say that another element that they would have to allege is sufficient facts to show that . . . it was readily apparent to him at the time that this was both material and exculpatory. . . .
>
> Judge Kethledge: Some evidence is obviously exculpatory.
>
> Counsel for Allen: Right.

(31:25–31:43.)

Yet the panel's decision adopted the "highly technical" argument Detective Allen asserts, dismissing this claim. (Panel Opinion at 14.) The decision conflicts not only with *Moldowan* but with numerous decisions of the Supreme Court making clear that such technical readings of claims are not contemplated by the Federal Rules. *See, e.g.*, *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 513 (2002) ("The liberal notice pleading of Rule 8(a) is the starting point of a simplified pleading system, which was adopted to focus litigation on the merits of a claim."). This claim, and others like it in civil suits in this Circuit, should be resolved on the merits.

## CONCLUSION

The panel's decision creates an unsupportable standard to obtain discovery in civil cases and conflicts with Supreme Court precedent. In this particular case, it denies an opportunity to discover the truth for a man who was wrongfully on death row for 20 years. This is the rare case where en banc review is warranted.

Respectfully submitted,

/s/ David E. Mills
David E. Mills (OH 0075400)
THE MILLS LAW OFFICE LLC
1300 West Ninth Street, Suite 636
Cleveland, OH 44113
Tel. (216) 929-4747
dm@MillsFederalAppeals.com

Terry H. Gilbert (OH 0021948)
Gordon S. Friedman (OH 0021946)
FRIEDMAN & GILBERT
55 Public Square Building, Ste. 1055
Cleveland, OH 44113
Tel. (216) 241-1430

Jeffry F. Kelleher (OH 0000784)
JEFFRY F. KELLEHER & ASSOC.
526 Superior Avenue, Ste. 1540
Tel. (216) 241-0520

*Counsel for Joe D'Ambrosio*

## CERTIFICATE OF SERVICE

I certify that on April 17, 2014, I filed the foregoing electronically with the Clerk of the United States Court of Appeals for the Sixth Circuit. The Court's ECF system will automatically generate and send by e-mail a Notice of Docket Activity to all registered attorneys currently participating in this case, constituting service on those attorneys.

/s/ David E. Mills
David E. Mills

*Counsel for Joe D'Ambrosio*
